# Irvin *v.* Strother.

*Assumpsit.*

(Decided June 30, 1909.    Rehearing denied Dec. 16, 1909.
50 South. 969.)

1. *Work and Labor; Implied Promise.*—The law implies a promise to pay a just and reasonable sum for services rendered which are knowingly accepted.

2. *Attorney and Client; Compensation; Contract.*—An attorney's claim for services must rest upon the contract or agreement of employment, express or implied, made with the person sought to be charged or with his authorized agent.

[Irvin v. Strother.]

3. *Same; Jury Question.*—Under the facts in this case, it was a question to be determined by the jury whether plaintiff was looking to the defendant for compensation for conducting litigation, and as to whether defendant understood that he was doing so.

APPEAL from Tallapoosa Circuit Court.

Heard before Hon. S. L. BREWER.

Action by J. W. Strother against John Irvin and another, for services rendered as an attorney. At the request of the plaintiff the court gave the affirmative charge to find against John Irvin, and refused a like charge to find for Irvin. Judgment for plaintiff from which defendant appeals. Reversed and remanded.

P. O. STEPHENS, and BULGER & RYLANCE, for appellant.—The court erred in giving the affirmative charge for the plaintiff, and refusing a like charge for defendant.—*L. & N. v. Lancaster*, 121 Ala. 471; *Humes v. Decatur L. & I. Co.*, 98 Ala. 461; *Foster v. Foster*, 126 Ala. 257; *Grimball v. Cruse*, 70 Ala. 544. However valuable the services of an attorney may have been to a party in a suit in which he represented others having a similar interest, he cannot recover from the party who has not employed him.—*Grimball v. Cruse, supra;* 1 Wait's action & Defenses, 456.

GEORGE A. SORRELL, and JAMES W. STROTHER, for appellee.—Where, in the absence of an express contract, valuable services are rendered by one person to another, which are knowingly accepted, the law will assume an obligation to pay for such services what they are reasonably worth.—*McFarland v. Dawson*, 128 Ala. 561; *Hood v. League*, 102 Ala. 228; 4th Cyc. page 984-85; Ib. 986. The contention is also made that Irvin was not acting for himself, but merely consented that his name might be used. If Irvin was acting for another and did not wish to be bound it was his duty to have

informed plaintiff for whom he was acting, or that he was acting for another person, and failing to do so, he became liable himself to plaintiff. For, an agent acting for an undisclosed principal binds himself.— *Manly v. Sperry,* 115 Ala. 524; *Bell v. Teague,* 85 Ala. 211. An agent who contracts in his own name without disclosing that he is acting for a principal incurs a personal liability which is primary in its character.— *Wood v. Brewer & Brewer,* 73 Ala. 259; *Dexter v. Ohlander,* 93 Ala. 441, 446; *Armour Packing Co. v. Vietch-Young Produce Co.,* 39 S. 680; 31 Cyc. 1555. An attorney may employ associate counsel for his client and bind the client to pay reasonable compensation for such services, and the client may become liable for reasonable compensation for the services of such associate even where the attorney is without special authority to employ an assistant, by conduct amounting to a ratification of the attorney's act in engaging one. —4th cyc. 986.

DENSON, J.—This record reveals the following state of facts, briefly stated: The Legislature passed an act in 1903, establishing a dispensary in Alexander City, which prohibited any person from engaging in the saloon business in that town after the 1st day of January, 1904. W. P. Truitt, Joe Jackson, and John Irvin were saloon keepers in the town at the time the act was passed. Truitt and Jackson employed two attorneys to test the constitutionality of the act, making an express contract with them for a fee of $300, to be paid to them provided they succeeded in having the act declared invalid. It was understood and agreed that the proceeding to test the validity of the act should be carried on in the name of John Irvin, though he was not bound for the fee to the attorneys. "The whole-

sale liquor men" furnished the $300, and the amount
was placed in the hands of E. P. Duncan, to be de-
livered to the attorneys if the courts declared the act
invalid.   In January, 1904, in pursuance of the agree-
ment, Irvin applied for license to sell liquor in Alexan-
der City.   On the day he appeared in Dadeville to
present his application to the probate judge for the
license, one of the attorneys who had been employed
to test the validity of the act asked the plaintiff in
this cause to come to his office at 1 o'clock with a view
to joining him in Irvin's case.   Plaintiff went to the
attorney's office, and according to plaintiff's testimony
the attorney informed him that Irvin had filed his ap-
plication with the probate judge for license to retail
liquors in Alexander City, for the purpose of testing
the dispensary law; that the application was sent for
hearing at 2 o'clock; and that, if the license was refus-
ed, the purpose was to commence mandamus proceed-
ings for the purpose of testing the law.   He further
said to plaintiff, "If we can win the suit we can get a
fee of $500," and plaintiff told the attorney he would
join him in the case on those terms.   Soon afterwards
Irvin went into the office where plaintiff and the other
attorney were, and the attorney stated to Irvin that
plaintiff had agreed to join him (the attorney) in the
case; and Irvin said that he was glad of it, that he was
glad to have plaintiff in the suit.   The proof shows that
from that time on plaintiff went forward with the liti-
gation, conducting same with no assistance from oth-
ers, to a successful termination.

The plaintiff testified that he never had any agree-
ment with Duncan about a fee in the case, that Duncan
did not agree to pay him any fee, but that he had been
informed that "Duncan was to do the paying in the
case."   He further testified that he never had any agree-

ment with Irvin about the amount of the fee in the case, nor any agreement with him as to plaintiff's employment in the case, but that Irvin conferred with him about the case, all along during its progress, and would, when in Dadeville, come to his office for that purpose, and that Irvin knew plaintiff was representing him in the case. One of the attorneys engaged by Truitt and Jackson testified that he employed plaintiff in the case; that Irvin had "nothing to do with employing the lawyers, nor with paying any part of their fee;" that he (witness) made the trade with plaintiff to come into the case, and employed him to "come in and assist him and his associate," and that Irvin was not present when he engaged plaintiff; that he afterwards told Irvin that, should he come to Dadeville and not find witness at home, he could call on plaintiff, who would advise him. He further testified that the money had been paid over to him by Duncan, and that of it he had $100 that belonged to "somebody." Irvin testified that he had nothing to do with employing the attorneys in the case; that witness was informed by one of the attorneys that he had employed the plaintiff, and was told by that attorney that he could consult with plaintiff, should he go to Dadeville and not find him (said attorney) there; and that witness did so upon one occasion.

The action is in assumpsit, upon the common counts, by the plaintiff (appellee here) against E. P. Duncan and John Irvin, to recover for services as an attorney claimed to have been rendered at the request of the defendants. There were verdict and judgment in favor of the defendant Duncan, and also in favor of the plaintiff against the defendant Irvin; the court having given the general charge with hypothesis, at the request of plaintiff in writing, against Irvin. From the

judgment, Irvin appealed, and here assigns for error the giving of the charge against him.

It is a settled principle of law "that an attorney's claim for professional services against persons sui juris must rest upon a contract of employment, express or implied, made with the person sought to be charged or his authorized agent."—4 Cyc. 984; 3 Am. & Eng. Ency. Law, 435; *Humes v. Decatur Land Co.,* 98 Ala. 461, 13 South. 368; *Milligan & Son v. Ala. Fertilizer Co.,* 89 Ala. 322, 7 South. 650; *Grimball v. Cruse,* 70 Ala. 544; *Tisdale v. Troy,* 152 Ala. 566, 44 South. 601. There is no pretense in this case that Irvin made any express contract of employment with plaintiff, nor that he had authorized any one to do so for him; nor does the evidence tend to show that he knew what was said between plaintiff and the attorney who invited him to come into the case. But we presume the theory of the plaintiff (he has no brief) to be that he was entitled to recover upon the principle that the law will imply a promise to pay a fair and reasonable compensation for services, rendered to another, which are knowingly accepted.—*McFarland v. Dawson,* 125 Ala. 428, 29 South. 327. This is a correct principle, and would probably be of easy application if the attorney who invited plaintiff into the case had been in the employment of the defendant; but, as we have seen, he was not. He was acting in the case under an express contract of employment with others. And in this state of the case it was not within the power of that attorney to raise up a privity between plaintiff and Irvin; nor do we think it could be asserted, as a matter of law, that what occurred between the attorney and the plaintiff created such privity.

But we find that the plaintiff testified (in addition to the evidence above recited) that, on the morning of

the day of his conversation with the attorney at the latter's office, Irvin spoke to plaintiff, and asked him if he would be in his office during the day, and that, upon his replying in the affirmative, Irvin said, "I might want to see you during the day." This—taken in connection with Irvin's remark, when informed that plaintiff had agreed to join the attorney in the case, and with the testimony of plaintiff to the effect that Irvin knew plaintiff was representing him—was sufficient, in our opinion, to make it a question for the jury, under proper instructions by the court, as to whether the plaintiff was looking to Irvin, and to Irvin alone, for compensation, and whether Irvin understood that he was so doing; and if the jury should find these propositions against the defendant then the plaintiff might recover.—*Humes v. Decatur, etc., Co.,* 98 Ala. 461, 13 South. 368; 3 Am. & Eng. Ency. Law, 441.

The views above expressed show that the circuit court erred in giving the charge for the plaintiff against Irvin, but committed no error in refusing the charge requested by Irvin.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and MAYFIELD, JJ., concur.


