224 So.2d 583

**Wynelle JACKS, as Executrix**

v.

**Nellie A. SULLINGER, as Executrix.**

**6 Div. 419.**

Supreme Court of Alabama.

Jan. 23, 1969.

Rehearing Denied June 5, 1969.

Second Rehearing Denied July 10, 1969.

Wingo, Bibb, Foster & Conwell, Birmingham, for appellant.

J. Clewis Trucks, Fairfield, for appellee.

SIMPSON, Justice.

This is a sad case. Both principals involved are now dead. They were both lawyers. Their association began sometime in the thirties when Mr. Sullinger came to Bessemer and commenced the practice of law with Mr. Mathews, who later became a judge in the Bessemer area.

For over thirty years these two men were close personal friends and law partners. After they had practiced law for many years together Mr. Mathews became judge of a court in Bessemer and Mr. Sullinger became Assistant Solicitor of the Tenth Judicial Circuit and practiced law before Judge Mathews for many years.

The friendship between these two men continued up until the time of the death of Mr. Sullinger, who, according to the evidence, Judge Mathews looked upon as his son. Mr. Sullinger died in late 1962, on Christmas day. Judge Mathews died on September 27, 1963.

Following the death of Judge Mathews, the executrix of the estate of Mr. Sullinger filed a claim for services rendered against his estate in the Probate Court of Jefferson County, in the amount of $15,000.-00. The Probate Judge granted the claim in part, his order in this regard being as follows:

"A claim being filed in this cause by Nellie A. Sullinger as Executrix of the Estate of Howard H. Sullinger deceased, in the amount of $15,000.00 and the Administratrix of the Estate of Freelin R. Mathews, deceased, Wynelle Jacks, has filed in this court under Section 216, Title 61, Ala. Code of 1940, her dispute as to the entire claim. * * *

"Howard H. Sullinger and Freelin R. Mathews were both attorneys and practiced in a partnership in the early Thirties, were close friends during both of their lives, Judge Mathews becoming Circuit Judge in the Bessemer Division in Jefferson County and Mr. Sullinger becoming Solicitor of the Bessemer Di-

vision of Jefferson County. That during this time Mr. Sullinger advised Judge Mathews on political, economic and personal matters. Judge Mathews retired from the bench October 1st, 1957 and on April 13th, 1959, he gave Mr. Sullinger an unlimited power of attorney and after this date Mr. Sullinger handled all affairs for Judge Mathews until the time of Mr. Sullinger's death which occurred on December 25th, 1962. In June of 1959 Judge Mathews was placed in Dunn's Nursing Home, in Selma, Ala., and from this time until he died Mr. Sullinger made weekly or bi-weekly visits to Judge Mathews to look after the health, welfare and personal needs of Judge Mathews and in addition to these interests he also looked after Judge Mathews' business interests, taxes and investments and these services continued until the death of Mr. Sullinger, in December, 1962. It is, therefore,

"ORDERED, JUDGED and DECREED that the legal representative of the Estate of Freelin R. Mathews, deceased, Wynelle Jacks as Administratrix, pay to the legal representative of the Estate of Howard H. Sullinger, deceased, Nellie A. Sullinger, Executrix, the sum of $5,250.00 for the services rendered by Howard H. Sullinger to Freelin R. Mathews, and it is further ordered that the Estate of Freelin R. Mathews, deceased, be taxed with the costs of this proceeding for which execution may issue."

From this judgment of the Probate Court the appellant appealed to the Circuit Court.

Following this appeal an extensive trial was held to the judge without a jury who at the conclusion thereof rendered a judgment in the favor of the personal representative of the estate of Mr. Sullinger in the amount of $7,000.00. From this judgment this appeal is taken.

The record in this case exceeds 453 transcript pages. It is replete with testimony relating to the nature of the services performed by Mr. Sullinger on behalf of Judge Mathews. It is also replete with testimony relating to the close relationship which existed between these two gentlemen. There was abundant expert testimony adduced going to the value of the services rendered over the period of time in question by Mr. Sullinger on behalf of Judge Mathews. As noted, the trial court concluded that his estate was entitled to $7,000.00 for services rendered.

It is the contention of the appellant that this case must be reversed for the following: (1) The evidence in the record compels the conclusion that there was no implied contract between Judge Mathews and Mr. Sullinger obligating Judge Mathews to pay for the services rendered by Mr. Sullinger. (2) That even if there were any such implied contract the award of $7,000.00 must be set aside because it is grossly excessive.

■ There is no essential dispute between these parties as to the governing legal principles. It is undisputed that the law implies a promise to pay a fair and reasonable compensation for services rendered to another which are knowingly accepted. Irvin v. Strother, 163 Ala. 484, 50 So. 969; Shirley v. McNeil, 272 Ala. 696, 133 So.2d 873. On the other hand, it is equally well established in the law that one may not recover for services gratuitously rendered to another with no expectation of payment.

■ It is the contention of the appellant that the services rendered by Mr. Sullinger on behalf of Judge Mathews were rendered without any expectation of payment and were rendered gratuitously and out of affection which he had for Judge Mathews. The appellee, on the other hand, contends that the evidence justified the finding made by the trial court that an implied contract existed, which obligated Judge Mathews' estate to pay a reasonable amount for the services so performed.

The question must of necessity then be a factual one. Irvin v. Strother, supra.

This factual issue was resolved by the trial court, who found that the estate of Mr. Sullinger was entitled to $7,000.00 as compensation for the services which he rendered to Judge Mathews during the period involved. We have read this record, this case having been submitted to this court under Rule 40, and have concluded that there is evidence which would support either finding. Therefore, we are not able to say that the judgment rendered by the trial court is contrary to the evidence. Neither is the judgment which was rendered by the trial court contrary to the law.

■ The other contention made by the appellant is that the judgment entered is excessive. We cannot agree. As noted earlier, attorneys in the area testified as to the value of the services which had been rendered by Mr. Sullinger in this period and much of this testimony supports the conclusion of the trial court that $7,000.00 is a reasonable amount.

It follows, therefore, that the judgment appealed from is affirmed.

Affirmed.

LIVINGSTON, C. J., and COLEMAN and BLOODWORTH, JJ., concur.

## On Rehearing

It is the contention of the appellant in her brief that this court erred in its opinion in the following:

"1. * * * in not stating in its opinion the facts which Appellant earnestly insists require reversal of the Circuit Court judgment * * *.

"2. * * * in not discussing in its opinion four fundamental principles of law which Appellant earnestly insists require reversal * * *.

"3. * * * in not considering in its opinion the important questions urged by the Appellant, and in saying that the case presents a 'factual issue (which) was resolved by the trial court'."

The appellant goes on to restate the propositions of law raised in the original briefs in this matter:

"Proposition No. 3. Where services are rendered in the mere expectation of a legacy, with or without any contract, expressed or implied, to pay for the services, there can be no recovery for the reasonable value thereof.

"Proposition No. 4. Long delay in presenting or prosecuting a claim creates a strong presumption against validity, particularly where the claim was not asserted in the life of the alleged debtor.

"Proposition No. 5. Services rendered without special promise to pay therefor by party not keeping, or intending to keep, account of work, must be regarded as matter of mutual accommodation for which neither party intended any charge to be made.

"Proposition No. 6. Fact that persons rendering services made no demand for payment until after they had been finished is a circumstance conducive to conclusion that services were intended to be gratuitous."

Although not a single case is cited in this brief in support of these propositions, no contention is made that these are not accurate propositions of law.

It is equally an accurate statement of the law that the law implies a promise to pay a fair and reasonable compensation for services rendered to another which are knowingly accepted. Irvin v. Strother, 163 Ala. 484, 50 So. 969, cited in the original opinion in this case.

The appellant reiterates portions of the testimony adduced at the trial below. It is her argument that the evidence set out in brief brings the case clearly within the scope of the foregoing propositions. Appellant sets out in brief the portions of the testimony which she contends do so, and says that the facts set out pertain to the following points: "the relations between

Sullinger and Mathews; the nature and character of Sullinger's services; the circumstances under which those services were performed; and the inadequacy of the expert testimony in the Circuit Court to sustain the allowance of $7,000 awarded for Sullinger's services to Mathews".

As to number one (the relation between Sullinger and Mathews), almost every witness who testified in the trial below testified that the relation between Sullinger and Mathews was a close, intimate, personal relationship. Every witness testified that these two men had great respect and admiration for each other. Every witness testified that Sullinger had been a junior partner of Mathews in the practice of law. Every witness who testified conceded or agreed that Mr. Sullinger had handled every aspect of Judge Mathews business for a period of some three and one-half years preceding Mr. Sullinger's death. The conduct of this business was done under a general power of attorney wherein Judge Mathews appointed Mr. Sullinger his attorney in fact with unlimited powers.

The appellant contends that the nature of the services rendered and work done by Mr. Sullinger for Judge Mathews was merely clerical. As to one subject, appellant says "The only services the record shows on this matter are Sullinger's two letters to Washington demanding payment * * *." The brief alleges that Mrs. Ashley a witness typed both of these letters, etc. The entire argument made by the appellant is that Mr. Sullinger's services were of a mere clerical, incidental nature amounting to no more than writing form letters, "gathering papers for preparation of tax returns", "receiving and depositing money", "writing checks and payment of regular bills", etc. The appellant would demean the value of the services. However, the record is replete with testimony to the effect that Mr. Sullinger handled every aspect of Judge Mathews' business for some three and one-half years. Perhaps it is true as appellant states that many of

these were mere chores, clerical tasks. All, however, take time.

In this connection, witness Wash Fitts testified as follows (Record, page 82):

"A. He [Judge Mathews] told me that he [Mr. Sullinger] had been a lot of help to him, that if it wasn't for him, he wouldn't have had a lot of things, that he had kept his things together. * * *

"Q. Did he tell you what Howard was doing for him?

"A. He said, he was looking after all his business; taking care of it."

On page 88 this witness testified that in his presence Judge Mathews had indicated that Mr. Sullinger was taking care of all of his business. He further testified that Judge Mathews had real estate and things like that, which Mr. Sullinger "took care of".

Witness Louise Ashley testified (Record, page 232) that after Howard Sullinger was given the power of attorney by Judge Mathews that he assumed full control over Judge Mathews' affairs. She testified that he did his banking and letter writing, the handling of his securities, the paying of his bills. She further testified that he looked after Judge Mathews' property located in Jonesboro. This witness testified (Record, page 236) that Mr. Sullinger made regular visits to Judge Mathews after he became confined to a nursing home in Selma. She testified that Mr. Sullinger saw that repairs were made to the Judge's house, that the grass got cut, paid the utility bills, grocery bills, paid the housekeeper, paid the taxes, and kept his magazine subscriptions up.

On page 256 this witness testified that Mr. Sullinger spent "three and a half years looking after Judge Mathews' business".

Witness Edna Jane Goodwin testified (Record, page 286) that "from what Judge Mathews said, that he wasn't really worried about anything; that Mr. Sullinger was looking after things for him. That would

be the implication, that he was looking after his business."

Witness Mrs. Hobson Smith testified (Record, page 289): "To my knowledge, Mr. Sullinger had complete supervision of all of Judge Mathews' affairs, especially during the last few months at home * * *."

Judge Robert W. Gwin, Judge of the Criminal Court of Jefferson County, testified (Record, page 293). The gist of Judge Gwin's testimony was that he had known Mr. Sullinger and Judge Mathews for a period of years. He testified that he and Judge Mathews were very close friends; that from 1952 until 1957 he had numerous conversations with Judge Mathews, in which he indicated his feelings and what he intended to do for Howard Sullinger. Judge Gwin testified that Judge Mathews had told him on numerous occasions that Mr. Sullinger was more than a son to him; that he had done more than a son could ever do; that he was one of the closest friends he had ever had; and that Judge Mathews on numerous occasions told him about all of the things that Mr. Sullinger was doing for him. Judge Gwin testified that based upon his knowledge of what Mr. Sullinger had done in supervising Judge Mathews' business and based upon his knowledge of the work done in Judge Mathews' behalf, in his opinion the value of the services rendered by Mr. Sullinger would be between twelve and fifteen thousand dollars. (Record, page 298)

On page 303 Judge Gwin testified that in his best judgment Mr. Sullinger had made as many as seventy-two round trips to Selma from Bessemer to discuss with Judge Mathews his business.

Witness Norman Brown testified (Record, pages 315–316). Mr. Brown is a practicing attorney in the City of Bessemer. He testified that for a period of over forty-two months, to his knowledge, Mr. Sullinger had managed all of Judge Mathews' affairs. On page 329 of the record Mr. Brown testified that in his opinion the value of the services rendered by Mr. Sullinger to Judge Mathews, including the menial, would be between nine thousand to twelve thousand dollars.

Appellant sought to elicit from this witness a distinction between services rendered as an attorney and services rendered under a general power of attorney. This witness clearly distinguished between the two and testified that he felt that the amount he stated would be a reasonable fee for acting as attorney in fact handling an estate of the size of Judge Mathews'.

Witness Rondle Barren testified that he had known both men over a period of many years. On page 369 of the record he testified that Mr. Sullinger had looked after the business affairs of Judge Mathews, had kept up his home, and had made at least eighty trips to Selma (Record, page 375).

This witness indicated that Judge Mathews had discussed in his presence his intention to repay Mr. Sullinger for all he had ever done for him (Record, page 390).

As we understand the appellant's argument in connection with the "inadequacy of the expert testimony in the Circuit Court to sustain the allowance of $7,000.00 awarded for Sullinger's services to Mathews" (Appellant's brief in support of application for rehearing, page 3), it is her contention that the services rendered on behalf of Judge Mathews by Mr. Sullinger were mundane, requiring no expertice, clerical, etc. Page after page of the transcript of the evidence in this case consists of cross-examination of appellee's witnesses by appellant's attorney seeking to elicit testimony to the effect that Mr. Sullinger did not act as an investment counselor for Judge Mathews. We agree with the appellant. We do not believe that this evidence supports the conclusion that Mr. Sullinger acted as an investment counselor for Judge Mathews. On the other hand, there is absolutely no contradiction in the evidence that Mr. Sullinger did, under a general power of attorney, conduct every aspect of Judge Mathews' business for more than three and one-half years. Two experienced members of

**228**

the Bar testified that the value of the services rendered by Mr. Sullinger to Judge Mathews were in excess of the award made below.

This case has been tried to the Probate Court. The Probate Judge ordered that the Mathews estate pay to the Sullinger estate the sum of $5,250.00 for the services performed. The appellant then appealed the case to the Circuit Court and tried it before the Honorable Circuit Judge Ball. He listened to numerous witnesses; he heard testimony and observed and considered documents totaling 453 transcript pages. He concluded that the estate of Judge Mathews was indebted to the estate of Mr. Sullinger in the amount of $7,000. The appellant appealed to this court. This court has carefully considered this case on application for rehearing and concludes that the application should be overruled. It is so ordered.

Opinion extended and application for rehearing overruled.

All the Justices concur.