# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 9, 2014         Decided January 23, 2015

No. 14-1022

JAMES L. ROBERTS,
PETITIONER

v.

NATIONAL TRANSPORTATION SAFETY BOARD AND FEDERAL
AVIATION ADMINISTRATION,
RESPONDENTS

———

On Petition for Review of an Order of
the National Transportation Safety Board

———

*Deanna L. Weidner* argued the cause for petitioner. With her on the briefs was *David B. Anderson*.

*Sonia K. McNeil*, Attorney, U.S. Department of Justice, argued the cause for respondents. With her on the brief were *Stuart F. Delery*, Assistant Attorney General at the time the brief was filed, and *Michael J. Singer*, Attorney. *Michael E. Robinson*, Trial Attorney, U.S. Department of Justice, and *James A. Barry*, Senior Attorney, Federal Aviation Administration, entered appearances.

Before: WILKINS, *Circuit Judge*, and SENTELLE and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: In 2009, the Administrator of the Federal Aviation Administration (FAA) suspended the license of Petitioner James L. Roberts, an airplane mechanic, for 120 days—and thereby also stripped him of his ability to earn a living practicing his craft. After roughly a year and a half of legal proceedings, the National Transportation Safety Board (NTSB), which hears appeals from FAA orders, vacated the suspension and found that the FAA's position had been unreasonable and not substantially justified. Petitioner then sought recovery of legal fees and expenses under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504(a)(1), but the NTSB denied fee-shifting on the grounds that Petitioner failed to show that he had "incurred" the fees associated with his legal defense in the license suspension proceedings, as required for an EAJA recovery. Even though the NTSB ultimately rejected a finding that Petitioner's employer had agreed to pay the fees and also recognized that Petitioner's lawyers had not performed services pro bono, it still concluded that Petitioner had not proved that *he* had incurred the fees.

The question before the Court is whether the NTSB's conclusion was arbitrary and capricious. We hold that it was, and that the NTSB should have considered that under the Alabama law of *quantum meruit*, Petitioner was obligated to pay his attorneys for the value of their services; as such, Petitioner "incurred" fees and may obtain EAJA fee-shifting. We therefore grant the Petition, vacate the decision, and remand the case to the NTSB to determine the appropriate amount of fees and expenses to award.

3

I.

At the time of the events in the underlying license suspension proceeding, Petitioner was Director of Maintenance for Alabama-based Darby Aviation ("Darby"). *In re Roberts*, NTSB Order No. EA-5696 (2014), 2014 WL 581820, at *7 ("NTSB Fee Order"). In July 2009, the FAA ordered a 120-day suspension of Petitioner's mechanic certification based on alleged regulatory violations including returning an aircraft to service when it was not in airworthy condition. *See Administrator v. Roberts*, NTSB Order No. EA-5556 (2010), 2010 WL 4253063, at *1. Petitioner contested the suspension before an NTSB Administrative Law Judge (ALJ) through four days of evidentiary hearings held in March and April 2010, after which the ALJ reduced Petitioner's suspension to 60 days.[1] *Id*. Petitioner and the FAA cross-appealed to the Board, which reversed the suspension entirely on the ground that the FAA had failed to present sufficient evidence to support its factual predicates. *Id*. The FAA sought rehearing, which the Board denied in January 2011. *See Administrator v. Roberts*, NTSB Order No. EA-5568 (2011), 2011 WL 289248, at *3. Although he initially appeared pro se, Petitioner was represented by counsel in most of these proceedings.

---

[1] "The Federal Aviation Act, 49 U.S.C. § 40101 *et seq*., establishes a split-enforcement regime in which the FAA has regulatory and enforcement authority, while the NTSB acts as an impartial adjudicator." *Garvey v. NTSB*, 190 F.3d 571, 573 (D.C. Cir. 1999) (internal quotation marks omitted). Although the case is captioned with NTSB as first respondent, the real parties in interest are Petitioner Roberts and the FAA; the NTSB, as impartial adjudicator, has a function "roughly analogous to that of a district court." *Hinson v. NTSB*, 57 F.3d 1144, 1147 n.1 (D.C. Cir. 1995).

On February 23, 2011, Petitioner filed an application under the EAJA seeking $66,693.27 in fees and expenses of the attorneys who represented him. The EAJA statute provides in relevant part:

> An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C. § 504(a)(1).

In a written order on the fee application dated June 13, 2011, an NTSB ALJ found that the FAA's position "was not reasonable in law and fact, and was, thus, not substantially justified." NTSB Fee Order, 2014 WL 581820, at * 18. But the ALJ also found that Petitioner had not incurred any expenses under the statute. *Id.* at *21.

The ALJ agreed with the FAA that "the submission of a billing that was addressed by [Petitioner's] counsel to Darby Aviation evidences that the attorney fees he seeks to recover were not actually incurred by him." *Id.* at *19. In reply, Petitioner contended that it was immaterial that his counsel also represented Darby and that an invoice had been "inadvertently" sent to Darby. *Id*. Petitioner submitted an affidavit from one of his attorneys, Deanna L. Weidner of Anderson Weidner, LLC, attesting that Petitioner was "legally obligated to pay for the fees and expenses associated with this case" and had "agreed to pay any fee award" to the law firm. *Id.* A second affidavit, from Darby's CFO, attested that Darby had "paid only a fraction" of Petitioner's legal fees and

5

expenses and that Darby had "no express indemnity agreement" with Petitioner. *Id.*

The ALJ also took issue with invoices submitted by Anderson Weidner for work done in 2009, noting "that applicant initially acted *pro se* in the underlying proceeding, and made submissions on his own behalf as late as November 24, 2009, and that Ms. Weidner did not enter an appearance as applicant's counsel in that matter until February 1, 2010." *Id.* at 20. As a result, the ALJ held that Petitioner could not recover fees for any services Anderson Weidner rendered prior to February 1, 2010. *Id.* The ALJ further criticized time billed for line items "clearly unrelated" to Petitioner. *Id.* Given this, the ALJ found that "Darby Aviation was responsible to Anderson Weidner, LLC, for payment" of all legal fees and expenses in this case, and on that basis concluded that Petitioner "did not incur the fees and expenses for which he seeks reimbursement in this EAJA action." *Id.* at *21.

Another ALJ heard and denied Petitioner's reconsideration request in April 2012. *Id.* at *11. On further appeal, the Board rejected the ALJ's conclusion that Darby had agreed to cover the costs of Petitioner's representation, but it nevertheless affirmed the denial of the application for fees and expenses, finding that the "record lacks clear evidence applicant personally 'incurred' fees for purposes of the statute." *Id.* at *5. This timely Petition for review of the NTSB final order followed. *See* 5 U.S.C. § 504(c)(2).

II.

We review de novo the NTSB's interpretation of the term "incurred" fees as it appears in the EAJA statute, 5 U.S.C. §

504(a)(1). *Green Aviation Mgmt. Co. v. FAA*, 676 F.3d 200, 202 (D.C. Cir. 2012) (citing *Turner v. NTSB*, 608 F.3d 12, 14 (D.C. Cir. 2010)). "[B]ecause the EAJA is a statute of general application, we do not defer to any one agency's interpretation." *Turner*, 608 F.3d at 14. We review the NTSB's reasoning in its decision under the Administrative Procedure Act's familiar arbitrary and capricious standard, 5 U.S.C. § 706(2)(A), and the NTSB's factual findings are binding on us so long as they are supported by "substantial evidence," 49 U.S.C § 44709(f). *See Singleton v. Babbitt*, 588 F.3d 1078, 1082 (D.C. Cir. 2009).

A.

"Neither EAJA nor the legislative history provides a definition of the word incur." *Ed A. Wilson, Inc. v. Gen. Servs. Admin.*, 126 F.3d 1406, 1408 (Fed. Cir. 1997) (quoting *SEC v. Comserv Corp.*, 908 F.2d 1407, 1413 (8th Cir. 1990)) (internal quotation marks omitted). Both Petitioner and the FAA tell us we must determine what "incur" means in this context.

The FAA urges us to apply a dictionary definition and commends us in particular to the current edition of Black's Law Dictionary. *See* BLACK'S LAW DICTIONARY 836 (9th ed. 2009) (to "incur" is "[t]o suffer or bring on oneself (a liability or expense)"). The NTSB reasons from this definition in its opinion below and the FAA argues in its brief here that "an applicant who has no personal responsibility ever to pay legal fees and expenses has not 'incurred' fees and expenses and therefore is not eligible under § 504 for an award." The FAA also contends that Petitioner "cites no authority for the proposition that the mere possibility of state law liability alters whether a party has 'incurred' fees within the meaning of EAJA."

But it is the FAA's position—that the absence of a written agreement is dispositive in determining whether a party has "incurred" fees within the meaning of EAJA—that is without authoritative support. The edition of Black's Law Dictionary that was current when Congress enacted the EAJA in 1980 defines "incur" to allow that a liability may be created other than by contract. BLACK'S LAW DICTIONARY 691 (5th ed. 1979) (stating that to "incur" is "[t]o have liabilities cast upon one by act or operation of law, as distinguished from contract, where the party acts affirmatively"). Petitioner argued to an ALJ and to the Board that his employers had not agreed to pay his legal fees and expenses and that he was personally "obligated to pay the attorneys who defended him in the enforcement action." NTSB Fee Order, 2014 WL 581820, at *3; *see id.* at *8. It was arbitrary and capricious for the NTSB to reject the possibility that a claim in *quantum meruit* creates a liability for the reasonable value of services rendered notwithstanding the lack of any valid contract. *See* RICHARD A. LORD, 23 WILLISTON ON CONTRACTS § 62:7 (4th ed. 2010) ("[W]here there is no express contract, a party's acceptance of, or acquiescence in, the services rendered by an attorney will raise an implied promise to pay for the services, unless the circumstances show that the services were intended to be gratuitous.").

The NTSB was required to look to Alabama law because it was the natural source of authority for Petitioner's claim that he was obligated to pay his attorneys even absent a written contract. *See* RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 1 cmt. a (2011) (describing unjust enrichment as an independent basis of liability in common-law legal systems); *see, e.g., Glick v. U.S. Civil Serv. Comm'n*, 567 F. Supp. 1483, 1489 (N.D. Ill. 1983) (finding in collateral dispute to EAJA fee award that, without

a contract, state law of *quantum meruit* entitles an attorney to the reasonable value of services rendered to the client). And, as it happens, Alabama law provides that Petitioner was legally responsible for paying his attorneys under the theory of *quantum meruit*. *See, e.g., Jacks v. Sullinger*, 224 So. 2d 583, 585 (Ala. 1969) ("[T]he law implies a promise to pay a fair and reasonable compensation for services rendered to another which are knowingly accepted."). In a case involving a claim for recompense by private counsel retained by the State's Governor, the Supreme Court of Alabama held that the attorneys were entitled "to a reasonable fee" for their work, even where there was no valid contract for the work performed because the retainer agreement was void *ab initio*. *State v. Am. Tobacco Co.*, 772 So. 2d 417, 422-23 (Ala. 2000). Indeed, the availability of *quantum meruit* recovery by attorneys in Alabama appears "well established." *See Triplett v. Elliott*, 590 So. 2d 908, 910 (Ala. 1991); *see also Lewis v. Haskell Slaughter Young & Rediker, LLC*, 582 Fed. Appx. 810, 814 (11th Cir. 2014) (affirming fee award based on *quantum meruit* theory in Alabama law).

Against this argument the FAA musters before this Court *Tyson & Arrington v. Thompson*, a century-old case that it submits for the proposition that a contract "may be implied only when an attorney demonstrates a reasonable expectation of being paid by the person whom counsel seeks to hold liable." 70 So. 649, 651 (Ala. 1915). But *Tyson & Arrington* does not do the work needed to justify the NTSB's reasoning—it stands merely for the proposition that the provider of officious or gratuitous services may not recover in *quantum meruit*. *See id.* In other words, Alabama law implies a promise to pay compensation for services rendered to another that are knowingly accepted except that "one may not recover for services gratuitously rendered to another with no expectation of payment." *Jacks*, 224 So. 2d at 584. No

one argues here that Petitioner's attorneys provided their services gratuitously.[2]

The NTSB did not perform any of this analysis. Instead, the Board reasoned that even though it could not conclude that Darby had agreed to pay Petitioner's attorneys, and even though the attorneys gave deposition testimony that they were not working pro bono, Petitioner had not proven that he was responsible for paying the fees because the invoices did not clearly say so. This defies logic. *Cf. Vance v. Heckler*, 757 F.2d 1324, 1327-28 (D.C. Cir. 1985) (administrative decision refusing to credit "process of elimination" was unsupported by substantial evidence). And it ignores the *quantum meruit* obligation, as described above. The Board treated the lack of an express contract as dispositive, but it erred in doing so.

The NTSB decision denying fees was therefore arbitrary and capricious because it failed to consider state law that was essential to its determination of whether Petitioner had incurred fees under the EAJA.

B.

Although we hold that the NTSB acted arbitrarily and capriciously in declining to consider state law showing Petitioner had incurred fees for his legal representation—and

---

[2] Had such an argument been made, Petitioner would not have a *quantum meruit* obligation to his attorneys but would be entitled to recovery for a different reason in that the EAJA allows recovery for pro bono representation. *See Am. Ass'n of Retired Persons v. EEOC*, 873 F.2d 402, 406 (D.C. Cir. 1989) (holding that fee-seekers could gain reimbursement pursuant to the EAJA for their pro bono counsel). The Board expressly recognized this point. *See* NTSB Fee Order, 2014 WL 581820, at *4 n.33.

10

based on that law, we hold that Petitioner did incur fees entitling him to fee-shifting—we emphasize several issues we do not decide and that we leave open on remand to the NTSB.

First, not all of the fees and expenses submitted in this case are necessarily eligible for reimbursement. An NTSB ALJ noted that some of Anderson Weidner's charges were for work done before it became counsel of record for Petitioner. NTSB Fee Order, 2014 WL 581820, at *20. Other itemized billings appear to have been for unrelated work performed for Darby, such as "issues on sale of business." *Id.* We do not mean to say that fees for these services have been "incurred" by Petitioner.

Second, we do not foreclose an exploration by the NTSB on remand of whether "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries" should reduce the reimbursement allowed in this case. *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004). Even though the documentation deficiencies cannot preempt the state law that shows Petitioner has "incurred" fees, those deficiencies may factor into the question of how much reimbursement is due. *See, e.g., Allen v. NTSB*, 160 F.3d 431 (8th Cir. 1988) (per curiam) (holding that reduced award was appropriate due to failures of documentary evidence). On remand, the NTSB may consider which submitted fees and expenses were supported by sufficient documentation and whether a reduction in award is appropriate in these circumstances.

11

III.

For the reasons stated in this opinion, the NTSB's conclusion that Petitioner did not "incur" legal fees and expenses within the meaning of 5 U.S.C. § 504(a)(1) was arbitrary and capricious. Accordingly, we vacate the NTSB's decision and remand the case for determination of the appropriate award under that statute.

*So ordered.*