# United States Court of Appeals
# for the Federal Circuit

---

**PAULA PARROTT,**
*Claimant-Appellant*

**v.**

**DAVID J. SHULKIN, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2016-1450

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 14-3209, Chief Judge Lawrence B. Hagel.

---

Decided: March 13, 2017

---

KENNETH M. CARPENTER, Law Offices of Carpenter Chartered, Topeka, KS, argued for claimant-appellant.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent-appellee. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., CLAUDIA M. BURKE; BRIAN D. GRIFFIN, DEREK SCADDEN, Office of General Counsel, United States Department of Veterans Affairs, Washington, D.C.

---

Before HUGHES, SCHALL, and STOLL, *Circuit Judges*.

SCHALL, *Circuit Judge*.

Paula Parrott appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") in *Parrott v. McDonald*, No. 14-3209(E), 2015 WL 5948165 (Vet. App. Oct. 14, 2015). In that decision, the Veterans Court awarded Ms. Parrott $4,050 in attorney fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2012). On appeal, Ms. Parrott argues that, in arriving at its award of attorney fees, the Veterans Court misinterpreted EAJA. As a result, she contends, the court adopted an incorrect approach for determining the cost of living adjustment to be used in calculating her attorney's hourly rate. She also contends that the court then abused its discretion by not allowing her to resubmit her EAJA application using the approach the court had adopted.

For the reasons set forth below, we hold that the Veterans Court did not err with respect to its cost of living adjustment determination. We also hold that we lack jurisdiction to address Ms. Parrott's contention that the court abused its discretion in not allowing her to resubmit her EAJA application. The decision of the Veterans Court is therefore affirmed.

BACKGROUND

I.

The pertinent facts are not in dispute. On August 4, 2014, the Board of Veterans Appeals ("Board") denied Ms. Parrott's claims for benefits on account of her veteran husband's esophageal adenocarcinoma, with liver and peritoneal metastasis, and his ensuing death. Subsequently, on May 19, 2015, the Veterans Court vacated the Board's decision and remanded the case to the Board for further development and readjudication. Order, *Parrott v. McDonald*, No. 14-3209 (Vet. App. May 19, 2015).

Following the court's decision, Ms. Parrott timely filed for attorney fees and expenses under EAJA.

## II.

In relevant part, EAJA provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . , incurred by that party in any civil action . . . , including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

In the proceedings below, the Secretary agreed that Ms. Parrott was a prevailing party and that his position in the underlying litigation was not substantially justified. In addition, the Secretary did not contend that there were any special circumstances that made an award to Ms. Parrott unjust. Thus, the sole issue before the Veterans Court was whether Ms. Parrott was entitled to the amount of fees and expenses she claimed. In her EAJA application, Ms. Parrott sought to recover attorney fees in the amount of $7,169.21 and $50.00 in expenses (representing the filing fee in the Veterans Court).

EAJA states that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living . . . justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A); *see also Levernier Constr., Inc. v. United States*, 947 F.2d 497, 503 (Fed. Cir. 1991) ("[T]he court may adjust the statutory cap governing the rate of attorneys fees upward to account for an increase in the cost of living."). When a court makes an upward adjustment in the cap governing the rate of attorney fees,

it usually calculates the adjustment using either the national Consumer Price Index ("CPI") for Urban Consumers or a local CPI. *See Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005) (calculating hourly rate adjustments using the national CPI); *Mannino v. West*, 12 Vet. App. 242, 243 (1999) (calculating hourly rate adjustments using a local CPI); *see also Sprinkle v. Colvin*, 777 F.3d 421, 427–28 & n.2 (7th Cir. 2015) (collecting cases). For convenience, we refer to these two methodologies, respectively, as the "national CPI approach" and the "local CPI approach." The national CPI approach generally focuses on the national scope of the statutory cap and the ease of computation. *See Jawad v. Barnhart*, 370 F. Supp. 2d 1077, 1085–88 (S.D. Cal. 2005) (adopting the national CPI approach due to EAJA's countrywide cap and pragmatic concerns with using local indices). The local CPI approach typically focuses on where an attorney works and has his or her office. *See Mannino*, 12 Vet. App. at 243 (reasoning that upward cost of living adjustments should account for "the actual CPI increase where the attorney works").

Ms. Parrott's claim for attorney fees of $7,169.21 was based on 37.4 alleged hours of work by her attorney at an hourly billing rate of $191.69.[1] To arrive at this rate, Ms.

---

[1] Calculating an attorney's hourly rate usually involves identifying a single, representative date on which the attorney's services were rendered—often called the "midpoint" date—and then using the midpoint date to determine the cost of living adjustment. *See Chiu v. United States*, 948 F.3d 711, 722 n.10 (Fed. Cir. 1991); *see also Elcyzyn v. Brown*, 7 Vet. App. 170, 181 (1994). Before the Veterans Court, Ms. Parrott agreed to modify the midpoint date of her CPI calculation from January 2015 to May 2015, thereby reducing the hourly rate requested for her attorney to $190.19. *Parrott*, 2015 WL 5948165,

Parrott calculated a CPI adjustment using the CPI for Washington, D.C. Ms. Parrott stated that her attorney, Chris Attig, had his principal office in Dallas, Texas, but also maintained offices in Little Rock, Arkansas, and San Francisco, California, and that he worked on her case in all three offices. Ms. Parrott argued that, although only "a very small portion of work" in the case was performed in Washington, D.C., J.A. 62, using the Washington, D.C. CPI was consistent with the Veterans Court's decision in *Mannino*. According to Ms. Parrott, applying the Washington, D.C. CPI "fulfill[ed] the intent of *Mannino* (applying the local cost-of-living increase actually experienced by an EAJA applicant represented by a Firm where work was performed nationally, but always before the Court in Washington, DC) . . . ." J.A. 68. Ms. Parrott declined to provide, as alternatives, either four separate billing rates based upon the CPIs for Dallas, Little Rock, San Francisco, and Washington, D.C., or a billing rate based solely upon the CPI for Dallas. J.A. 62.

Responding to Ms. Parrott's application, the Secretary acknowledged that an adjustment of the $125 statutorily-capped rate was appropriate. J.A. 29–30. He argued, though, that the adjustment should be calculated using the CPI for Dallas, Texas, where Mr. Attig had his principal office. This approach resulted in an hourly billing rate of $183.74. J.A. 42.

## III.

The Veterans Court declined to follow either Ms. Parrott's or the Secretary's approach, concluding that neither the CPI for Washington, D.C., nor the CPI for Dallas, Texas, was appropriate. "Rather," the court stated, "the

---

at *1 n.1 (citing J.A. 61 n.2). In her appeal, Ms. Parrott seeks the original hourly rate of $191.69. *See* Appellant Opening Br. 19; Appellant Reply Br. 3.

fairer course is to use the cost of living actually experienced by Mrs. Parrott's attorney where the legal services were performed." *Parrott*, 2015 WL 5948165, at *3 (internal quotation marks and alterations omitted) (quoting *Porter v. Astrue*, 999 F. Supp. 2d 35, 39 (D.D.C. 2013)). Starting from that premise, the court reasoned that the approach most consistent with *Mannino* was to use the local CPI to calculate the hourly rate for each of the three locations in which Mr. Attig performed work—Dallas, Little Rock, and San Francisco—and then to review Mr. Attig's itemized billing statement and apportion each of the forty-two billing entries listed to each of his firm's offices where work was performed. *Id.*

Noting that the burden was on Ms. Parrott "to show the reasonableness of the fees requested," *id.* (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)), the Veterans Court stated that Ms. Parrott had failed to carry that burden:

> To grant the fees requested by Mrs. Parrott, the Court would have to make a determination that it is reasonable for an attorney appearing before this Court of national practice to request fees at the Washington, D.C., metropolitan area hourly rate for services performed in locations outside of the Washington, D.C., metropolitan area. Mrs. Parrott has failed to meet her burden of showing the reasonableness of the fees she requested.

*Id.* at *4.

As seen, the Veterans Court determined that the correct approach for determining Mr. Attig's fee was to use the local CPI to calculate the hourly rate for each of the three locations in which Mr. Attig performed work and to then review Mr. Attig's itemized billing statement and apportion each billing entry to the firm office where the work resulting in the entry was performed. The court stated, however, that "[t]o grant . . . fees under the standard the Court has determined is proper . . . the Court

would have to seek additional information from Mrs. Parrott and her attorney (namely the amount of work performed in each office) and calculate *four* separate hourly rates." *Id.* at *4. Declining to take on this task, the court stated it would, instead, award attorney fees at the statutory rate of $125. *Id.* After finding that 32 was a reasonable number of hours for the work performed by Mr. Attig, the court ruled that Ms. Parrott was entitled to recover attorney fees in the amount of $4,000 (32 hours of attorney work, billed at the rate of $125 per hour), plus $50 in filing fees, for a total recovery of $4,050. Ms. Parrott timely appealed the Veterans Court's decision. We have jurisdiction under 38 U.S.C. § 7292.

DISCUSSION

I.

Section 7292 of title 38 provides that we "'shall decide all relevant questions of law' arising from appeals from decisions of the Veterans Court, but, '[e]xcept to the extent that an appeal . . . presents a constitutional issue, [we] may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.'" *Sneed v. McDonald*, 819 F.3d 1347, 1350–51 (Fed. Cir. 2016) (quoting 38 U.S.C. § 7292(d)(1)–(2)). As noted, Ms. Parrott argues that, in its decision on her attorney fees application, the Veterans Court misinterpreted EAJA.

An argument that the Veterans Court misinterpreted a statute falls within our jurisdiction. *See Cameron v. Shinseki*, 721 F.3d 1365, 1368 (Fed. Cir. 2013) (holding that we have jurisdiction over the Veterans Court's interpretation of statutes); *Bowey v. West*, 218 F.3d 1373, 1376 (Fed. Cir. 2000) (holding that the Veteran Court's interpretation of EAJA presents a question of law within our jurisdiction). Because they present issues of law, we review questions of statutory interpretation from the Veterans Court *de novo*. *Bowey*, 218 F.3d at 1376 ("Statu-

tory interpretation is a question of law, which we review without deference."); *see also Hudgens v. McDonald*, 823 F.3d 630, 634 (Fed. Cir. 2016) ("We review statutory and regulatory interpretations of the Veterans Court *de novo*." (quoting *Johnson v. McDonald*, 762 F.3d 1362, 1364 (Fed. Cir. 2014))).

## II.

Ms. Parrott argues that the Veterans Court misconstrued EAJA by requiring her to calculate the cost of living adjustment to her attorney's hourly rate using the local CPI approach. Appellant Opening Br. 5–14. According to Ms. Parrott, EAJA does not mandate a particular method for computing attorney fees, and the Veterans Court therefore erred by requiring a specific approach for every case. *Id.* at 13. Continuing, Ms. Parrott urges that there is ambiguity in EAJA because it does not specify the CPI approach to be used in calculating an attorney's hourly rate. From there, she contends that, because ambiguity in a statute relating to veterans benefits is to be construed in favor of the veteran, she should be permitted to use the CPI approach yielding the highest return in fees.[2] *Id.* at 16–17. In Ms. Parrott's view, this "optimal yield" approach allows her to select the CPI of "the location of [her] attorney or the location of the Veterans Court." *Id.* at 17. Here, Ms. Parrott contends that she is entitled to use the CPI for the location of the Veterans Court—Washington D.C.[3] *Id.* at 3, 8, 25.

---

[2]     Ms. Parrott takes the position that, when applied to litigation in the Veterans Court, EAJA becomes a veterans benefits statute. Oral Argument at 4:18–4:43 (No. 16-1450), available at http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2016-1450.mp3.

[3]     As noted, Ms. Parrott's attorney maintains an office in San Francisco and worked on her case there.

The Secretary responds that the Veterans Court complied with its precedent in *Mannino*. Appellee Response Br. 10–12. While acknowledging that courts have split in their use of the national CPI and the local CPI approaches, he urges that the "weight of authority" favors the local CPI approach. *Id.* at 13–14. In the Secretary's view, the local CPI approach is more consistent with the plain language of EAJA because "prevailing market rates" and the "cost of living" are inherently local phenomena. *Id.* at 18–21. Moreover, he continues, the local CPI approach produces fairer outcomes because it accounts for the actual cost of living experienced by the EAJA applicant's attorney. *Id.* at 21–24. The Secretary also resists Ms. Parrott's optimal yield approach, arguing that EAJA is not a veterans benefits statute, but rather a statute of general application. He also argues that EAJA represents a waiver of sovereign immunity and thus should be strictly construed in the government's favor. *Id.* at 24–28.

### III.

### A.

As in any statutory construction case, we begin with the plain language of the statute. *See Sebelius v. Cloer*, 133 S. Ct. 1886, 1893 (2013). EAJA reimburses prevailing

---

*Parrott*, 2015 WL 5948165, at *2 n.3. San Francisco has a higher CPI than Washington, D.C. *See* Appellant Opening Br. 19–20; Appellant Reply Br. 4. Ms. Parrott's argument ostensibly would allow her to use San Francisco's CPI to calculate her attorney's hourly rate, but she does not urge that approach.

In addition, on appeal, Ms. Parrott does not challenge the reduction of billable hours from 37.4 (as claimed in her EAJA application) to 32 (as allowed by the Veterans Court). J.A. 6–7, 26. The award of $50 in filing fees also is not in dispute.

parties in certain civil actions against the United States for "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A). Attorney fees must be "based upon prevailing market rates" and are statutorily capped at "$125 per hour *unless* the court determines that an increase in the cost of living . . . *justifies a higher fee.*" 28 U.S.C. § 2412(d)(2)(A) (emphases added).

In *Mannino*, the Veterans Court adopted the local CPI approach for calculating increases in hourly attorney rates above the EAJA cap. *Mannino*, 12 Vet. App. at 243. The court held that EAJA presumptively limits an attorney's hourly rate to $125 and that any upward adjustment must be based on the local CPI "where the attorney works." *Id.* The Veterans Court noted that there is a split of authority on this issue and that some district courts do use the national CPI approach. *Id.* at 243–44. The court determined, however, that using the local CPI approach is the "fairer course" because it better reflects the "cost-of-living increases actually experienced by the EAJA applicant." *Id.* at 243 (internal alterations omitted) (quoting *Cox Constr. Co. v. United States*, 17 Cl. Ct. 29, 37 (1989)).

The question addressed in *Mannino* appears to be one of first impression in this court. In *Chiu v. United States*, 948 F.3d 711 (Fed. Cir. 1991), we reviewed a decision from the United States Claims Court that used local cost of living figures to calculate EAJA fees, but we took no position on the propriety of that approach. *See* 948 F.2d at 713 (accepting without comment the local Washington, D.C. cost of living), 719 (taking issue with the date of the Claims Court's cost of living but not its location). Similarly, in *Levernier*, we reversed the Claims Court's upward adjustment of EAJA fees where market rates were below the statutory cap, but we did not address whether the local or the national CPI should apply where market rates were above the cap. 947 F.2d at 503–04. Finally, in *Doty v. United States*, 71 F.3d 384 (Fed. Cir. 1995), we awarded

EAJA fees based upon an hourly rate above the statutory cap, but in that case the government did not contest the manner of calculating attorney fees, and we thus had no occasion to rule on the question before us now. 71 F.3d at 387. None of these cases provides controlling guidance on the proper CPI approach under EAJA.[4]

---

[4]    Neither has the issue been addressed in our Vaccine Act cases, as the Vaccine Act implements a fee-shifting statute textually different from EAJA. In *Avera v. Secretary of HHS*, 515 F.3d 1343 (Fed. Cir. 2008), for example, we explained how the "forum rate"—the rate of the location where the court sits—serves as the "lodestar" in attorney fees calculations under the Vaccine Act. 515 F.3d at 1349. The Vaccine Act, however, provides compensation only for "reasonable attorneys' fees." 42 U.S.C. § 300aa–15(e)(1). Unlike EAJA, the Vaccine Act does not include a statutory cap or grant upward adjustments based on "the cost of living." 28 U.S.C. § 2412(d)(2)(A). Thus, *Avera* does not instruct us how to augment a statutory rate cap with an express "cost of living" modifier.

*Avera* ultimately used an exception to the forum rule from *Davis Co. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999), to apply a lower local CPI rate. *Avera*, 515 F.3d at 1349–50. This exception applies when the bulk of an attorney's work occurs outside the forum and there is a significant difference in attorney compensation between the forum and the location of the work. *Davis*, 169 F.3d at 759–60. The purpose of the exception is to prevent windfalls to attorneys—the same consideration undergirding EAJA generally and, as seen below, the local CPI approach in particular. *See Hyatt v. Barnhart*, 315 F.3d 239, 254 (4th Cir. 2002); *Hamblen v. Colvin*, 14 F. Supp. 3d 801, 809 (N.D. Tex. 2014).

After considering the statutory text and the relevant cases, we think the local CPI approach, where a local CPI is available, *see Mannino*, 12 Vet. App. at 243, is more consistent with EAJA than the national approach. We therefore hold that the Veterans Court did not err in ruling that the local CPI approach represented the correct method of calculating the adjustment in Ms. Parrott's attorney's hourly rate.[5]

The local CPI approach gives the most effect to the statutory text. EAJA expressly defines recoverable attorney fees in terms of "prevailing market rates for the kind and quality of the services furnished" and states in relevant part that attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in "the cost of living" justifies a higher fee. 28 U.S.C § 2412(d)(2)(A). These two factors—market rates and the cost of living—strike us as being inherently local in nature. We thus believe that using the market rate and the cost of living actually experienced by an EAJA applicant's attorney is most consistent with EAJA's plain

---

[5] Ms. Parrott suggests in passing that calculating hourly rate adjustments using the CPI is unduly restrictive. We do not agree. The CPI is an objective, readily-available, quantitative index measuring the costs impacting a consumer. *See* BLACK'S LAW DICTIONARY 359 (9th ed. 2009) (equating the "consumer price index" with a "cost-of-living index"). This factor—costs impacting a consumer—is the very one EAJA seeks to account for in its "cost of living" modifier. *See, e.g.*, *Sullivan v. Sullivan*, 958 F.2d 574, 576–77 & n.6 (4th Cir. 1992). We therefore agree with courts which have held that the Consumer Price Index for all items appropriately tracks "the cost of living" under EAJA. *See, e.g.*, *Sprinkle*, 777 F.3d at 427–28 ("Courts should generally award the inflation-adjusted rate according to the CPI.").

language.  *Mannino*, 12 Vet. App. at 243; *Cox*, 17 Cl. Ct. at 37.  Indeed, the Supreme Court, under a different fee-shifting statute, expressed "reasonable" attorney fees in terms of "prevailing market rates *in the relevant community*."  *Blum*, 465 U.S. at 895 & n.11 (emphasis added) (interpreting the attorney fees provision for civil rights actions under 42 U.S.C. § 1988).

The local CPI approach also better fulfills the purposes underpinning EAJA.  Congress passed EAJA to (1) ensure adequate representation for those needing to vindicate their rights against the government and (2) minimize the cost of this redress to taxpayers.  *Baker v. Bowen*, 839 F.2d 1075, 1083 (5th Cir. 1988); *see also* EAJA, Pub. L. No. 96–481, § 202, 94 Stat. 2325 (1980) (describing EAJA's purposes); *Kelly v. Nicholson*, 463 F.3d 1349, 1353 (Fed. Cir. 2006).  The local CPI approach advances both of these goals.  It assists litigants with meritorious claims in securing suitable counsel, whose costs may exceed national rates.  Undercompensating such applicants would deter them from bringing lawful claims against the government, thereby frustrating EAJA's stated intent.  *See, e.g.*, *Payne v. Sullivan*, 977 F.2d 900, 903 (4th Cir. 1992) (finding that insufficiently compensating EAJA applicants "undermine[s] the purpose of EAJA to remove the financial disincentive to challenge wrongful government action" (quoting *Animal Lovers Volunteer Ass'n, Inc. v. Carlucci*, 867 F.2d 1224, 1227 (9th Cir. 1989))); *Meyer v. Sullivan*, 958 F.2d 1029, 1034 (11th Cir. 1992); *Hamblen*, 14 F. Supp. 3d at 809.  Similarly, the local CPI approach reduces taxpayer exposure by preventing windfalls to attorneys whose costs of living lie below the national average.  *Hamblen*, 14 F. Supp. 3d at 809; *Mannino*, 12 Vet. App. at 243.

The national CPI approach provides none of the above benefits.  Under that approach, attorneys whose costs of living dip below the national CPI receive a windfall, encumbering the public with fees unneeded to represent

the applicant. At the same time, attorneys whose costs of living surpass the national CPI are not reimbursed for their true fees, discouraging the representation EAJA seeks to secure.

Using local CPI figures is also consistent with our holding in *Levernier*. In that case, we refused to grant a cost of living increase to an attorney whose market rate fell short of the statutory cap. *Levernier*, 947 F.2d at 503–04. Because an attorney's rate is partially a function of his or her cost of living (among other things), *Levernier* suggests that local price conditions can serve as the ultimate barometer of an EAJA award. Other circuits have reached similar conclusions, limiting for EAJA purposes hourly rates to those in the relevant community or the attorney's personal rate. *See, e.g.*, *Sprinkle*, 777 F.3d at 428 & n.2 (limiting rates to those "in line with those prevailing in the community for similar services"); *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 450 (6th Cir. 2009); *Johnson v. Sullivan*, 919 F.2d 503, 505 (8th Cir. 1990) ("[E]vidence that the petitioner's counsel ordinarily charges a fee of no greater than [the statutory rate] would preclude a cost-of-living increase above that amount."); *Clark v. Comm'r of Soc. Sec.*, No. 16-5393, 2016 WL 6958640, at *4 (6th Cir. 2016) (unpublished) (limiting cost of living increases to the "prevailing rates in the community").

## B.

Based upon the foregoing, we see no error in the Veterans Court's use of the local CPI approach. Ms. Parrott acknowledges that her attorney worked in—and maintained—distinct offices in San Francisco, Dallas, and Little Rock. The Veterans Court therefore properly concluded that her EAJA application should have apportioned Mr. Attig's time to those locations and used the CPI for each locality. *Parrott*, 2015 WL 5948165, at *4.

C.

As noted, Ms. Parrott also contends that an EAJA applicant in the Veterans Court may select whatever CPI approach yields the most favorable hourly rate for his or her attorney. We do not agree. To begin with, nothing in the statute suggests that an applicant is permitted to claim "the highest fee" or "the maximal cost of living increase." In fact, the statute instructs the opposite. It limits fee awards to a prescribed cap and requires applicants to justify requests for higher sums. *See, e.g.*, *Johnson v. Sullivan*, 919 F.2d at 504–05; *Baker*, 839 F.2d at 1084. EAJA also mandates that attorney fees be tethered to "prevailing market rates," further grounding them in an objective, identifiable standard, distinct from Ms. Parrott's "optimal yield" approach. 28 U.S.C. § 2412(d)(2)(A); *see also Clark*, 2016 WL 6958640, at *4 (explaining that EAJA cases do not "stand for the proposition that a district court must award the maximum amount possible once the statutory cap is increased"). Permitting EAJA applicants in the Veterans Court to use whatever method maximized their return would unmoor the calculated fees from "prevailing market rates" and "the cost of living" experienced by the applicant or the applicant's attorney. This runs afoul of the statutory text and EAJA's prohibition against windfalls. *See Hyatt*, 315 F.3d at 254 ("EAJA should not produce windfalls to attorneys." (internal quotation marks omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.4 (1983))); *see also Sprinkle*, 777 F.3d at 429 (limiting upward adjustments to rates "in the community for comparable legal services"); *Levernier*, 947 F.2d at 503–04 (preventing upward adjustments when attorneys' billable rates were below the statutory cap).

In urging her optimal yield approach, Ms. Parrott relies on the doctrine that interpretive doubt in the context of a veterans benefits statute is to be construed in favor of the veteran. *See Brown v. Gardner*, 513 U.S. 115, 118

(1994); *Nielson v. Shinseki*, 607 F.3d 802, 808 (Fed. Cir. 2010); *Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1378 (Fed. Cir. 2001). There are two problems with this argument, however. First, as the discussion in III.A above makes clear, we do not see ambiguity in the provisions of EAJA at issue in this case. Second, and just as importantly, the canon of statutory interpretation upon which Ms. Parrott relies does not apply here. EAJA is not a veterans benefit statute. It is a statute of general applicability. EAJA applies to any "prevailing party . . . in any [nontort] civil action" brought by or against the United States, regardless of the underlying cause of action. 28 U.S.C. § 2412(d)(1)(A); *see also* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney Fees for Unreasonable Government Conduct (Part One)*, 55 LA. L. REV. 217, 229–30 (1994) (discussing EAJA's "unparalleled" breadth due to its general application). EAJA allows claimants to recover fees in all sorts of nonveterans cases. *See, e.g.*, *Shalala v. Schaefer*, 509 U.S. 292 (1993) (Social Security disability benefits); *Pierce v. Underwood*, 487 U.S. 552 (1988) (low-income housing litigation against the Department of Housing and Urban Development); *Sakhawati v. Lynch*, 839 F.3d 476 (6th Cir. 2016) (appeal from a decision by the Board of Immigration Appeals); *Roberts v. Nat'l Transp. Safety Bd.*, 776 F.3d 918 (D.C. Cir. 2015) (employment actions undertaken by the FAA and NTSB).

Finally, the cases which Ms. Parrott cites are not on point. In each case on which she relies, the statute at issue was unquestionably directed to veterans benefits and was not a law of general application governing the public at large. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 431 (2011) (involving notices of appeal for veterans disability claims under 38 U.S.C. § 7266); *King v. St. Vincent's Hosp.*, 502 U.S. 215, 216 (1991) (Veterans' Reemployment Rights Act, then codified

at 38 U.S.C. §§ 2021–26); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 278 (1946) (Selective Training and Service Act of 1940); *Frederick v. Shinseki*, 684 F.3d 1263, 1265 (Fed. Cir. 2012) (Veterans Benefits Act of 2003). Ms. Parrott cites no case—and we have not found one—standing for the proposition that a generally applicable law should be construed in a litigant's favor merely because that litigant is a veteran. Accordingly, we reject Ms. Parrott's invitation to interpret EAJA as permitting a veteran to use the CPI method yielding the highest return in attorney fees.

IV.

A.

As seen, the Veterans Court determined that Ms. Parrott had failed to show the reasonableness of her requested fee because her application omitted the CPIs and hourly allotments for each locale where her attorney worked on her case. *Parrott*, 2015 WL 5948165, at \*4. The court therefore awarded Ms. Parrott the statutory rate of $125 per hour. *Id.*

Ms. Parrott challenges the court's decision as an abuse of discretion.[6] Appellant Opening Br. 21–22. According to Ms. Parrott, the Veterans Court was "required to afford [her] attorney the opportunity to amend her fee application" to comply with the court's CPI ruling. *Id.* at 23–24.

The Secretary argues that we lack jurisdiction to review this aspect of the Veterans Court's decision. Appel-

---

[6] Ms. Parrott at times frames this issue as whether the Veterans Court acted *ultra vires*, but her arguments essentially focus on whether the court abused its discretion, not on whether the court acted beyond its power. Appellant Opening Br. 22.

lee Response Br. 28–29. Alternatively, he contends, the Veterans Court did not abuse its discretion in awarding Ms. Parrott the statutory rate because Ms. Parrott failed to establish the reasonableness of her requested fee. *Id.* at 30–35. In the Secretary's view, nothing required the Veterans Court to allow Ms. Parrott to amend her EAJA submission. *Id.* at 36–37.

## B.

As already stated, our jurisdiction over veterans cases is limited. Again, except to the extent an appeal presents a constitutional or legal issue, we may not review "(A) a challenge to a factual determination or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2); *see also Wagner v. Shinseki*, 733 F.3d 1343, 1349 (Fed. Cir. 2013) (holding that we lack jurisdiction to review the Veterans Court's determination on the reasonableness of an EAJA fee award when the court applies the correct legal standard).

As noted, Ms. Parrott asks us to find that the Veterans Court abused its discretion by not permitting her to resubmit an amended EAJA application. But contrary to the assumption implicit in this argument, we do not have freestanding authority to review all discretionary actions taken by the Veterans Court. Instead, our jurisdiction attaches when the Veterans Court commits an abuse of discretion rising to the level of legal error. 38 U.S.C. § 7292(d)(1); *see also Dixon v. Shinseki*, 741 F.3d 1367, 1373–74 (Fed. Cir. 2014) (ruling that the Veterans Court abuses its discretion when it misapplies controlling legal standards—a question of law); *Cook v. Principi*, 353 F.3d 937, 940 (Fed. Cir. 2003) (finding that we have no jurisdiction to review abuses of discretion on factual matters); *Forshey v. Principi*, 284 F.3d 1335, 1351 (Fed. Cir. 2002) (en banc) (setting forth our jurisdiction in terms of legal questions); *Maggitt v. West*, 202 F.3d 1370, 1374 (Fed. Cir. 2000) (stating that the Veterans Court abuses its discre-

tion when it misconstrues its own jurisdiction, a legal issue).

Here, the Veterans Court did not interpret any law or regulation in declining to give Ms. Parrott the opportunity to resubmit a corrected EAJA application. It simply found that she had failed to demonstrate the reasonableness of the fee and used its broad discretion to calculate one for her. *Pierce*, 487 U.S. at 571 (stating that courts have the discretion to calculate the amount of EAJA fees). This is a factual matter that we are not empowered to review. 38 U.S.C. § 7292(d)(2); *Cook*, 353 F.3d at 940; *Wagner*, 733 F.3d at 1349.

Nor has Ms. Parrott shown how the decision of the Veterans Court amounted to legal error. It is undisputed that Ms. Parrott's application was facially deficient under the correct standard. The Veterans Court therefore never had the information it needed to compute her fee under the appropriate approach. We know of no controlling authority, statute, regulation, or rule that requires a court to *sua sponte* request and accept amended EAJA applications, after judgment, on facts similar to those in this case. Accordingly, we see no legal error in the Veteran Court's ruling.

CONCLUSION

For the reasons stated above, we hold that the Veterans Court did not err in ruling that the local CPI approach represented the correct method of calculating the adjustment in Ms. Parrott's attorney's hourly rate. We also hold that we lack jurisdiction to review the court's decision not to allow Ms. Parrott to amend her EAJA application. The decision of the Veterans Court is therefore affirmed.

**AFFIRMED**

COSTS

Each party shall bear its own costs.