# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-2811(E)

JOHN B. SPEIGNER, JR., APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appellant's Application for Attorney Fees and Expenses

(Argued October 19, 2018                                         Decided February 28, 2019)

*Barton F. Stichman*, of Washington, D.C., argued for the appellant. *Katy S. Clemens*, of Washington, D.C., and *Daniel W. Halston* and *David Rollins-Boyd*, both of Boston, Massachusetts, were on the pleadings, for the appellant.

*Julia A. Turner*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, were on the pleading, all of Washington, D.C., for the appellee.

Before SCHOELEN, BARTLEY, and MEREDITH, *Judges*.

SCHOELEN, *Judge*: Veteran John B. Speigner, Jr., filed an application under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for an award of attorney fees and expenses in the amount of $11,605.72. This Court has jurisdiction under 28 U.S.C. § 2412(d)(2)(F) to award reasonable attorney fees and expenses. Mr. Speigner requests that his attorneys, Caitlin M. Milo and Rory E. Riley, who are employed by National Veterans Legal Services Program (NVLSP),[1] but working in locations other than NVLSP's office in Washington, D.C., receive hourly attorney fees of $201.89 based on the Consumer Price Index for all Urban Consumers (CPI-U)[2] for the

---

[1] Attorney Riley no longer works for NVLSP, but was employed there during Mr. Speigner's appeal. Appellant's Reply Memorandum (Appellant's Reply) at 6.

[2] The CPI-U is published by the U.S. Department of Labor's Bureau of Labor Statistics. *See* BUREAU OF LABOR STATISTICS, *available at* https://www.bls.gov/ (last visited Feb. 27, 2019). The CPI-U is a "measure of the average change over time in the prices paid by urban consumers for a market basket of consumer goods and services." BUREAU OF LABOR STATISTICS, https://www.bls.gov/cpi/ (last visited Feb. 27, 2019).

Washington, D.C., area[3] rather than the CPI-Us for New Jersey and North Carolina, where attorney Milo and attorney Riley live and telework, respectively. 28 U.S.C. § 2412(d)(2)(A).

Advanced technology in the workplace has allowed telework to become an increasingly popular option for employees, including attorneys. The U.S. Office of Personnel Management has stated that numbers of teleworking employees are steadily increasing, and that, in fiscal year 2017, 21% of all federal employees participated in telework. U.S. OFFICE OF PERSONNEL MGMT., Status of Telework in the Federal Government, Report to Congress, Fiscal Year 2017, at 31 (Jan. 2019), https://www.telework.gov/reports-studies/reports-to-congress/annual-reports (last visited Feb. 27, 2019). Telework presents a novel issue for this Court when it selects a CPI-U for an attorney who works on a case from his or her residence located in a geographical area different from that of his or her employer's office.

This case was referred to panel to address two separate, but related, questions: (1) When a teleworking attorney works on a case from his or her residence, should the CPI-U correspond to the location of the teleworking attorney's residence, and (2) when overhead costs are incurred by the attorney's employer's office, should the location of the employer's office and its corresponding CPI-U be used? We hold that, where a teleworking attorney has worked on a case from his or her residence, the CPI-U should correspond to the location of the attorney's residence. We also conclude that selecting a CPI-U based on where overhead costs are incurred is not supported by the caselaw, and we note that basing CPI-U on where overhead costs are incurred appears to be an overly burdensome standard that frustrates the purposes of EAJA. The Court will grant Mr. Speigner's EAJA application, but in the reduced amount of $11,390.65.

## I. FACTS AND PROCEDURAL HISTORY

An April 14, 2016, Board of Veterans' Appeals (Board) decision denied Mr. Speigner's claim for entitlement to a temporary total disability rating following January 2010 back surgery. Mr. Speigner appealed the Board's denial of this issue to the Court, where the parties agreed to a joint motion for partial remand (JMPR). The Court granted that motion on September 29, 2017,

---

[3] There is no CPI-U specific to Washington, D.C., but there is a CPI-U for the Washington, D.C. area (DC-VA-MD-WV). This regional CPI-U was used. *See Mannino v. West*, 12 Vet.App. 242, 243 (1999) (holding that a regional CPI-U will be used when a local CPI-U is not available); *see also* BUREAU OF LABOR STATISTICS, *available at* https://www.bls.gov/cpi/ (last visited Feb. 27, 2019).

vacating the April 2016 Board decision to deny a temporary total rating, and remanding the matter for action consistent with the JMPR.

In October 2017, Mr. Speigner filed a timely application for attorney fees and expenses under EAJA, requesting an hourly rate of $201.89 for attorneys Milo and Riley, calculated using the Washington, D.C., area CPI-U. *See* Application for Attorneys' Fees and Expenses (EAJA Application). Attorneys Milo and Riley worked on the case exclusively from their residences in Swedesboro, New Jersey, and Charlotte, North Carolina, respectively. Appellant's Reply at 6. The appellant also seeks fees for an attorney who worked at NVLSP's D.C. office; a paralegal who worked at NVLSP's D.C. office; and David Rollins-Boyd, an attorney who worked at the Boston, Massachusetts, office of Wilmer Cutler Pickering Hale and Dorr LLP (WilmerHale), who provided pro bono representation.[4] *See* EAJA Application at 9-10.

## II. ANALYSIS

EAJA is a fee-shifting statute that reimburses prevailing parties in certain civil actions against the United States for "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A). The statute explains that "reasonable attorney fees"

> shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an *increase in the cost of living* or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A) (emphasis added).

When determining whether a cost-of-living increase justifies awarding attorney fees in excess of EAJA's $125-per-hour maximum, this Court compares the CPI-U for all items for the locality or region where the legal services were performed when the statutory maximum hourly rate was established, i.e., the "base rate," with the CPI-U for the time when the legal services were provided. *Mannino*, 12 Vet.App. at 243; *see Elcyzyn v. Brown*, 7 Vet.App. 170, 181 (1994) (holding that the selection of the CPI-U will be based on the location "where the services were

---

[4] The retainer agreement between Mr. Speigner and WilmerHale shows that WilmerHale agreed to represent him on a pro bono basis, but that WilmerHale was also authorized to apply for attorney fees and expenses under fee shifting statutes, such as EAJA.

performed"). If the latter is greater than the former, the percentage difference between the two CPI-Us is applied to increase the statutory hourly rate, and the higher hourly rate is approved.

## A. CPI-U and Attorney Location

The Secretary asserts that Mr. Speigner did not use the correct CPI-U to calculate the fees for attorneys Milo and Riley because the attorneys did not work on the case in Washington, D.C., and, in accordance with the caselaw, the fees should be calculated using the CPI-Us corresponding to where the attorneys worked on the case.[5] Secretary's Resp. at 2-8. Mr. Speigner responds that the Washington, D.C., area CPI-U should be used to calculate the increase in cost of living for attorneys Milo and Riley, asserting that the caselaw, specifically *Parrott v. Shulkin*, 851 F.3d 1242 (Fed. Cir. 2017), supports using the Washington, D.C., area CPI-U. Appellant's Reply at 3-4. He argues that *Parrott* focused on an attorney's office location and though attorney Milo worked on his case from her residence, she used NVLSP's D.C. office address as her business address and the address for all legal correspondence.[6] *Id*. at 5-6.

Nonetheless, the Court's caselaw is clear that to calculate the cost-of-living adjustment under EAJA, the CPI-U corresponds to the location where an attorney works. *See Elcyzyn*, 7 Vet.App. at 181 (holding that the CPI-U must be applied "where the services were performed"). In *Mannino*, the Court found that the local CPI-U should be applied when available and, when it is not, the regional CPI-U should be applied, because "the national policy underlying the EAJA (to encourage the representation of persons with claims against the United States[)] . . . is better served by tying the attorney-fee rate paid more closely to the actual CPI[-U] increase *where the attorney works*." 12 Vet.App. at 243 (emphasis added). In another case, when addressing the appropriate fee for attorneys whose firm had multiple office locations, the Court held that attorneys who worked at their firm's Richmond, Virginia, office should not receive a fee based on the CPI-U corresponding to the firm's Washington, D.C., office, because they did not perform work at the firm's Washington, D.C., office. *Baldridge v. Nicholson*, 19 Vet.App. 227, 246 (2005).

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) addressed CPI-U selection for an attorney who worked on a case at offices in San Francisco, Dallas, and Little Rock,

---

[5] The Secretary only disputes the fees requested for attorneys Milo and Riley and not any other aspect of the EAJA application. Secretary's Response to Appellant's Application for Attorney Fees and Expenses (Secretary's Resp.).

[6] The appellant contends that the same is also true for attorney Riley. *See* Appellant's Reply at 6 n.3.

and also did very little work in Washington, D.C., where he did not have an office. *Parrott*, 851 F.3d at 1245-46. The Federal Circuit found that the attorney's time should be apportioned among those offices in San Francisco, Dallas, and Little Rock, and that the CPI-U for the location of each of these three offices must be used for the work performed at that office. *Id*. at 1249-50. Citing *Mannino*, the Federal Circuit explained that "[t]he local CPI[-U] approach typically focuses on where an attorney works and has his or her office" and that using the "market rate and the cost of living actually experienced by an EAJA applicant's attorney is most consistent with EAJA's plain language." *Id*. at 1245, 1249; *see Cox Constr. Co. v. United States*, 17 Cl. Ct. 29, 37 (1989) (holding that the CPI-U for San Diego would be used because that is the "locale in which legal services were rendered"); *Kunz Constr. Co. v. United States*, 16 Cl. Ct. 431, 438 (1989) ("The CPI[-U] figures to be applied are those for the cost of living increases experienced in the locale where legal services were rendered.").

Mr. Speigner argues that attorney Milo identified her office as NVLSP's Washington, D.C., office and that a reading of *Parrott* warrants using the CPI-U of the Washington, D.C., area. Appellant's Reply at 5-6. However, his argument fails. *Parrott* held that the local CPI-U approach "typically focuses on where an attorney works *and* has his or her office," and that, because the attorney maintained offices in San Francisco, Dallas, and Little Rock and worked on the case in all three locations, the EAJA application should have apportioned the attorney's time among those locations and used the CPI-U for each locality. *Parrott*, 851 F.3d at 1245, 1250 (emphasis added). Further, in *Baldridge*, this Court held that the attorneys were required to use the CPI-U of the location of the firm's office where the work was performed, not merely where the firm had another office. 19 Vet.App. at 246. Though Mr. Speigner is correct that *Parrott* focused on where an attorney worked and maintained an office, where, as here, the teleworking attorneys' services were exclusively performed at their residences, their residences serve as their de facto offices. Mr. Speigner's argument for selecting the CPI-U that corresponds to the location of NVLSP's headquarters is not based on any work being completed there. There is no other work location besides the attorneys' residences for the Court to consider. If attorneys Milo or Riley had also performed work at NVLSP's office in Washington, D.C., then it would also have been appropriate for the hours worked there to be billed based on the Washington, D.C., area CPI-U.

Mr. Speigner also asserts that selecting a CPI-U based on where an attorney works on a case is an unworkable standard. Appellant's Reply at 8. For example, he asks the Court to consider

an attorney whose office is located in Butte, Montana, and who takes a trip to New York City and works 7 hours there and then spends 5 hours working while visiting his ailing mother in Tampa, Florida. *Id.* Mr. Speigner asserts that, in this hypothetical, we would have to use the CPI-Us for both New York City and Tampa for the hours worked at each location. *Id.* But, because here attorneys Milo and Riley do not assert that they worked outside their residences, the facts of this case do not implicate Mr. Speigner's argument concerning what CPI-U would be used when a small amount of work is completed outside the residence. Moreover, the Court's finding in this case does not speak to whether temporary settings may be considered de facto offices. The holding here does not change how EAJA applications have been traditionally adjudicated, and it applies the long-established standard of CPI-U selection based on where an attorney works and has an office to a teleworking attorney who works on a case from his or her residence. *See Baldridge*, 19 Vet.App. at 246; *Mannino*, 12 Vet.App. at 243; *Elcyzyn*, 7 Vet.App. at 181.

Based on the Court's own precedent and the Federal Circuit's decision in *Parrott*, the Court holds that when a teleworking attorney works on a case from his or her residence, the CPI-U must be based on the location of the teleworking attorney's residence. Because the legal services at issue in this case were exclusively performed at attorney Milo's and attorney Riley's residences, the CPI-U should correspond to the locations of their residences.

### B. Overhead Costs and Cost of Living

The Court now turns to Mr. Speigner's overarching argument – that the cost-of-living adjustment under EAJA is intended to address the rising prices of an attorney's overhead costs over time. Because the Court uses the local or regional CPI-U where an attorney works to calculate the cost-of-living adjustment, *see Mannino*, 12 Vet.App. at 243, Mr. Speigner urges the Court to find that the Washington, D.C., area CPI-U should be used because NVLSP's Washington, D.C., office pays the overhead costs to support the teleworking attorneys' work. Appellant's Reply at 11. In support of his argument, he primarily relies on *Baldridge*, which held:

> [EAJA] [a]pplicants are not permitted to bill for and collect fees for clerical work and the work of general support staff. Because of the assumption that "work done by librarians, clerical personnel and other support staff . . . [is] generally considered within the overhead component of a lawyer's fee," costs for such work are not properly charged to the government under EAJA.

6

19 Vet.App. at 236 (citing *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 974 (D.C. Cir. 2004)); *see* Appellant's Reply at 9. He argues that, because *Parrott* held that the cost-of-living adjustment is determined by where an attorney works and has an office, the purpose is to address an attorney's overhead costs at his or her office. *Id*. at 9, 11.

In recounting the various costs incurred by NVLSP's Washington, D.C., office, he states that attorney Milo uses a computer owned by NVLSP's D.C. office that functions by "remotely accessing a corresponding physical computer tower with its own dedicated space in NVLSP's D.C. office." Appellant's Reply at 6. He states that the computer is hosted on a server in the D.C. office; the information technology staff that supports the computer and software is located at the D.C. office; all computer filings are uploaded and transmitted via an NVLSP-owned computer; all office equipment and supplies used by the attorney are paid for by the D.C. office; and the rates for equipment and maintenance, "as well as regular monthly fees for internet access and for the hardware and software when applicable, are paid by NVLSP's D.C. office at Washington, D.C.[,] area rates." Appellant's Reply at 6-7. Mr. Speigner further notes that attorney Milo's phone number and cell phone are hosted by the telephone exchange at the D.C. office and that her mail is sorted, scanned, and uploaded by staff located at the D.C. office.[7] *Id*. at 7-8.

In turn, the Secretary posits that the cost-of-living adjustment under EAJA is intended to address the rising prices of the personal costs for goods and services experienced by an attorney where he or she lives and works. He argues that, for example, it is less expensive to hire an attorney who works in New Jersey, where attorney Milo worked on the case, than it is to hire an attorney who works in D.C., because in New Jersey, goods and services cost less. Oral Argument at 28:24-28:47, *Speigner v. Wilkie*, U.S. Vet. App. No. 16-2811 (oral argument held Oct. 19, 2018), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

The Court declines to take Mr. Speigner's approach for several reasons. Despite Mr. Speigner's assertions that the maximum statutory fee and cost-of-living adjustment under EAJA pertains to an attorney's overhead costs, the Court has already addressed the definition of "cost of living" under EAJA. In *Elcyzyn*, 7 Vet.App. at 179-81, when determining what CPI-U to use to calculate the cost-of-living adjustment under EAJA, the Court adopted the reasoning of

---

[7] When discussing overhead costs, Mr. Speigner only addressed attorney Milo, not attorney Riley. Appellant's Reply at 6-8. However, he explained that the overhead costs and cost of living relevant to attorney Milo were identical to those for attorney Riley when she worked on the case in June 2016 for NVLSP. *Id*. at 6.

*Sullivan v. Sullivan*, 958 F.2d 574 (4th Cir. 1992), and *Dewalt v. Sullivan*, 963 F.2d 27 (3d Cir. 1992). In *Sullivan*, the U.S. Court of Appeals for the Fourth Circuit determined that, because "cost of living" was not defined by EAJA, it assumed its commonly understood meaning – "the costs of food, shelter, clothing, and other basic goods and services needed in everyday life." 958 F.2d at 576-77; *see Dewalt*, 963 F.2d at 29-30. In *Elcyzyn*, this Court subsequently determined that the CPI-U for all items, as opposed to the CPI-U for personal services (which includes legal services), should be used to measure the cost-of-living adjustment under EAJA. 7 Vet.App. at 180-81; *see Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992) (holding that, because "cost of living" is not defined by EAJA, it should be given its "common, ordinary meaning" and is properly measured by the CPI-U). The CPI-U for all items measures items that a consumer uses in everyday life, such as clothing, food, transportation, household furnishings and operations, fuel and utilities, and medical care. BUREAU OF LABOR STATISTICS, The Consumer Price Index, ch. 17 (Feb. 14, 2018), *available at* www.bls.gov/opub/hom/pdf/homch17.pdf. And, in *Parrott*, the Federal Circuit addressed the cost-of-living adjustment under EAJA and held that the CPI-U measures the costs impacting "a consumer" and that this factor is the "very one EAJA seeks to account for in its cost of living modifier." 851 F.3d at 1249 n.5 (internal quotation marks omitted); *see Dewalt*, 963 F.2d at 29 (holding that EAJA's cost-of-living adjustment to award a fee in excess of the statutory limit "takes into account the general purchasing power of money – the lawyer's cost of living as well as the client's"). Contrary to Mr. Speigner's argument that the CPI-U of NVLSP's D.C. office should be used because of the D.C. prices of business-related expenses, the CPI-U for all items does not measure items related to business expenses. *Id.*

Though it is correct that overhead costs are not separately recoverable under EAJA and are recognized as a component of an attorney's fee, *see Baldridge*, 19 Vet.App. at 236, this does not in turn lead to the conclusion that the maximum statutory fee under EAJA, which may be adjusted to account for cost-of-living increases, is intended to specifically address the rising prices of an attorney's overhead costs. EAJA set a maximum statutory fee for an attorney's legal services that may be upwardly adjusted for an increase in "cost of living," a term whose commonly understood meaning the Court has embraced, and the Court has determined that the cost-of-living adjustment under EAJA is properly measured by the CPI-U for all items, which tracks the price changes of items a consumer purchases in everyday life. *See Elcyzyn*, 7 Vet.App. at 180-81. Mr. Speigner does not demonstrate how his definition of "cost of living," i.e., an attorney's overhead costs, is

8

consistent with *Elcyzyn* and the Court's standard of CPI-U selection based on where an attorney works. *See Parrott*, 851 F.3d at 1245; *see also Baldridge*, 19 Vet.App. at 246; *Mannino*, 12 Vet.App. at 243.

Moreover, Mr. Speigner similarly fails in arguing that reading *Baldridge* and *Parrott* together warrants a finding that the cost-of-living adjustment under EAJA is intended to specifically address an attorney's overhead costs. Appellant's Reply at 10-11 (asserting that overhead costs are part of an attorney's fee and that, under *Parrott*, the costs of living associated with the work of attorney Milo were actually experienced in Washington, D.C.). Although the Federal Circuit in *Parrott* was faced with different arguments, it did not focus on where overhead costs to support the attorney's legal services were incurred, nor did it ask which office supplied the attorney's computer or cell phone or where the administrative work was carried out. *Parrott*, 851 F.3d at 1249-50. The Federal Circuit cited favorably to its holding in *Levernier Constr., Inc. v. United States*, 947 F.2d 497, 503 (Fed. Cir. 1991), noting that, because an attorney's rate is "partially a function of his or her cost of living (among other things), . . . local price conditions can serve as the ultimate barometer of an EAJA award." *Parrott,* 851 F.3d at 1250. The emphasis on the impact of local price conditions on an attorney's cost of living was not based on the attorney's overhead costs or business expenses. *Id*. Rather, the Federal Circuit explained, EAJA's cost-of-living modifier focuses on the costs affecting a consumer and that the CPI-U, which measures the costs of a consumer's purchases in day-to-day life, appropriately tracks the cost of living under EAJA. *Id*. at 1249, n.5. Because *Parrott* determined that the CPI-U was the appropriate method by which to measure the cost-of-living adjustment under EAJA, that case does not support Mr. Speigner's argument that the cost-of-living adjustment specifically pertains to an attorney's overhead costs.

Next, Mr. Speigner briefly argues that, in addition to the caselaw, the history of EAJA supports his position that the cost-of-living adjustment is intended to address an attorney's overhead costs. Appellant's Reply at 10. He states that overhead costs have been "part of the equation in calculating attorneys' fees from the inception of the EAJA" and quotes the testimony of a representative of the American Bar Association, made during a subcommittee hearing in 1982, who stated:

> An effort to reduce the $75 limit down to something that is equated to salary divided into an hourly basis that is paid to Government attorneys is a mistake. This is not a basis for comparability. If you were to take that salary and add onto it the

overhead represented by the cost of support services, rent, utilities, and all those things, alone, it would go way up. The mistake, on the part of some people, is to believe that whatever the hourly rate charged by lawyers is 100 percent profit.

*Hearing on the Equal Access to Justice Act Before the Subcomm. on Agency Administration of the S. Comm. on the Judiciary*, 97th Cong. 213 (1982) (testimony of John S. Pachter, Chairman, Federal Contract Claims and Remedies Committee, Section of Public Contract Law, American Bar Association).

However, again, the caselaw is clear that the maximum statutory fee does not pertain to where an attorney's overhead costs are incurred, but where an attorney works. *See Parrott*, 851 F.3d at 1249-50; *Baldridge*, 19 Vet.App. at 246; *Mannino*, 12 Vet.App. at 243; *Elcyzyn*, 7 Vet.App. at 181. Additionally, using the standard of CPI-U selection suggested by Mr. Speigner may place a significant burden on the EAJA applicant – the individual intended to be assisted by EAJA to recover his costs to secure counsel – and on the Court. *See* EAJA, Pub. L. No. 96-481, § 202, 94 Stat. 2325 (1980) (describing EAJA's purposes). For example, the standard may require an EAJA applicant (albeit likely through his or her attorney) to exhaustively search business records and the receipts of an attorney's office to compile a list of overhead costs incurred by that office. Such an onerous requirement would undermine EAJA's purpose, which is to ensure that persons not be "'deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights.'" *Sullivan v. Hudson*, 490 U.S. 877, 883 (1989) (quoting Pub. L. No. 96-481, 94 Stat. 2325 (1980)). A request for attorney fees should not result in a second major litigation. *See Pierce v. Underwood*, 487 U.S. 552, 563 (1988) ("[A] 'request for attorney's fees should not result in a second major litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983))).

In sum, we find that selection of a CPI-U based solely on where overhead costs are incurred is not supported by our caselaw adopting the common, ordinary definition of "cost of living" and using the CPI-U based on where an attorney works to calculate the cost-of-living adjustment under EAJA. *See Parrott*, 851 F.3d at 1245; *Mannino*, 12 Vet.App. at 243; *Elcyzyn,* 7 Vet.App. at 181. A CPI-U selection based solely on where overhead costs are incurred would ignore the Court's own precedent, and would potentially be overly burdensome to an EAJA applicant and frustrate EAJA's purpose to assist litigants in bringing lawful claims against the Government. *See* EAJA, Pub. L. No. 96-481, § 202, 94 Stat. 2325 (1980) (describing EAJA's purposes). Therefore, we

10

reiterate that, in the case of a teleworking attorney who works on a case in his or her residence, the CPI-U of the location of the attorney's residence must be used.

## C. Application of Law to Facts

In light of this discussion, to calculate the cost-of-living adjustment under EAJA to determine the proper attorney fees, the Court will use the CPI-Us of the locations where attorneys Milo and Riley worked.[8] The Secretary requests that the Court award the statutory hourly fee of $125 per hour for attorneys Milo and Riley; however, we disagree because Mr. Speigner provided the relevant CPI-Us in his reply to the Secretary's response. *Cf. Parrott v. McDonald*, 2015 WL 5948165, at *4 (U.S. Vet. App. Oct. 14, 2015) (order) (applying the $125 statutory rate where the appellant failed to provide the CPI-U information for the three locations where her attorney performed work), *aff'd, Parrott*, 851 F.3d at 1253 ("We know of no controlling authority . . . that requires a court to sua sponte request and accept amended EAJA applications, after judgment, on facts similar to those in this case. Accordingly, we see no legal error in the Veteran[s] Court's ruling [that the $125 statutory rate applies]."). Attorney Milo worked on the case in her residence in Swedesboro, New Jersey, and attorney Riley worked on the case in her residence in Charlotte, North Carolina. Appellant's Reply at 6. Applying the CPI-U for Philadelphia-Camden-Wilmington, PA-NJ-DE-MD, to attorney Milo's legal services, results in an hourly fee of $191.68 for 20.5 hours; and the appellant is entitled to recover $3,929.44. Applying the CPI-U for the South-Size Class B/C, all urban consumers, to attorney Riley's legal services, results in an hourly fee of $187.50 for .4 hours; and the appellant is entitled to recover $75.[9] The Court therefore grants the EAJA application in the reduced amount of $11,390.65.

---

[8] The Secretary does not contend that Mr. Speigner's EAJA application does not meet the other statutory requirements set forth in 28 U.S.C. § 2412(d). The appellant is a prevailing party, has shown that he is a party eligible for an award because his net worth does not exceed $2,000,000, has alleged that the Secretary's position was not substantially justified, and included an itemized statement of the attorney fees and expenses. *Id*.; *see* EAJA Application. The Secretary also does not oppose the hours requested and the Court finds that the hours requested are reasonable. *McCormick v. Principi*, 16 Vet.App. 407, 413 (2002); *see Chesser v. West*, 11 Vet.App. 497, 501 (1998) ("The Court has wide discretion in the award of attorney fees under the EAJA.").

[9] Appellant's Reply at 13-14; Exhibits C and D.

## III. CONCLUSION

Upon consideration of the foregoing and the pleadings in this matter, Mr. Speigner's EAJA application is GRANTED, IN PART, in the reduced amount of $11,390.65 for attorney fees and expenses.